UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON WETHINGTON,

                        Plaintiff,

v.

                        Case # 16-CV-6162-FPG

                        DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.
_____

Aaron Wethington ("Wethington" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On June 3 and June 14, 2013, Wethington applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 152-59. He alleged that he had been disabled since January 1, 2006 due to ankle arthritis, chemical dependency, and depression. Tr. 182. On September 4, 2014, Wethington and a vocational expert ("VE") testified at a hearing via

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

videoconference before Administrative Law Judge Julia D. Gibbs ("the ALJ"). Tr. 50-76. On September 23, 2014, the ALJ issued a decision finding that Wethington was not disabled within the meaning of the Act. Tr. 38-45. On January 14, 2016, the Appeals Council denied Wethington's request for review. Tr. 1-5. Thereafter, Wethington commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Wethington's claim for benefits under the process described above. At step one, the ALJ found that Wethington had not engaged in substantial gainful activity since the alleged onset date. Tr. 40. At step two, the ALJ found that Wethington has the following severe impairments: ankle arthritis, anxiety, and depressive disorder. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 40-41.

Next, the ALJ determined that Wethington retained the RFC to perform sedentary[3] and light[4] work with additional limitations. Tr. 41-43. Specifically, the ALJ found that Wethington can stand for up to one hour at a time and cannot interact with the public or crowds. Tr. 41.

At step four, the ALJ found that this RFC prevents Wethington from performing his past relevant work. Tr. 43. At step five, the ALJ relied on the VE's testimony and found that Wethington can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 43-44. Specifically, the VE testified that Wethington could work as a folder, inspector (light work), assembler, document preparer, and inspector (sedentary work). Tr. 44. Accordingly, the ALJ concluded that Wethington was not "disabled" under the Act. Tr. 44-45.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**II. Analysis**

Wethington argues that remand is required because the ALJ improperly weighed the medical opinions of record. ECF No. 9-2, at 14-20. Specifically, Wethington asserts that the ALJ erred by affording only "some weight" to the medical opinions of consultative examiner Yu-Ying Lin, Ph.D. ("Dr. Lin") and treating physician Adrian Leibovivi, M.D. ("Dr. Leibovivi") without explaining why portions of those opinions were rejected. The Court agrees.

The SSA's regulations require the ALJ to "evaluate every medical opinion [he or she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must consider the following factors when he or she weighs a medical opinion: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the opinion was rendered by a specialist in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In general, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).

Accordingly, when an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently")).

Here, the record contained two medical opinions. Dr. Lin opined that Wethington can follow and understand simple directions and instructions; can perform simple tasks independently and complex tasks with supervision; is mildly limited in maintaining attention and concentration; is moderately limited in maintaining a regular schedule, learning new tasks, making appropriate decisions; and is moderately to markedly limited in relating adequately with others and appropriately dealing with stress. Tr. 327. Dr. Lin also opined that the results of his examination were "consistent with psychiatric problems" but did "not appear to be significant enough to interfere with [Wethington]'s ability to function on a daily basis." Tr. 328.

Dr. Leibovivi opined that Wethington is "limited but satisfactory" in his ability to adhere to basic standard of neatness and cleanliness, travel in unfamiliar places, and use public transportation. Tr. 460. Dr. Leibovivi also opined that Wethington is "seriously limited, but not precluded" from understanding, remembering, and carrying out detailed instructions, interacting appropriately with the public, and maintaining socially appropriate behavior. *Id.* He further indicated that Wethington is "unable to meet competitive standards" in setting realistic goals, making plans independently of others, and dealing with the stress of semiskilled and skilled work. *Id.* He explained that Wethington has short term memory issues and increased anxiety in new, stressful, crowded, and unfamiliar situations. *Id.* Dr. Leibovivi also opined that

Wethington would be absent from work more than four days per month due to his impairments or treatment. Tr. 461. Dr. Leibovivi concluded that Wethington's impairments lasted or can be expected to last for at least 12 months. *Id.*

The ALJ briefly summarized portions of these opinions in her decision and then concluded that both opinions were entitled to "some weight" because "both indicate that [Wethington]'s condition would require some workplace accommodations but would not preclude [him] from all gainful employment." Tr. 43.

Despite all of the opinion evidence cited above, the ALJ concluded that Wethington could perform the full range of sedentary and light work as long as he did not have to stand for more than one hour at a time or interact with the public. Neither Dr. Lin nor Dr. Leibovivi opined as to Wethington's ability to stand, and thus it is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination as to standing without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."). The limitation related to public interaction is consistent with Dr. Lin and Dr. Leibovivi's opinions, yet every other limitation that those doctors prescribed is absent from the RFC assessment even though the ALJ afforded both opinions "some weight." Tr. 41, 43. Even though she was obligated to do so, the ALJ offered no meaningful explanation as to why she rejected those limitations.[5] *See* S.S.R. 96-8p, 1996 WL

---

[5] Although Wethington does not explicitly argue that the ALJ violated the treating physician rule, the Court notes that the ALJ was required to give controlling weight to Dr. Leibovivi's opinion if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). Here, the ALJ did not provide the requisite "good reasons" for discounting Dr. Leibovivi's opinion. On remand, Wethington is entitled to express

374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."). Accordingly, remand is required.

Although the Commissioner provides several reasons why she thinks Dr. Lin and Dr. Leibovivi's opinions were unsupported by their objective findings and inconsistent with Wethington's treatment, daily activities, and the record as a whole, the ALJ's decision did not give any of these reasons for affording less weight to those opinions. The Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 17, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

consideration of Dr. Leibovivi's opinion, a statement of the weight given to that opinion, and good reasons for the ALJ's decision. *Newbury v. Astrue*, 321 F. App'x 16, 18-19 (2d Cir. 2009) (summary order).